**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **WUXI GOUGELILA ELECTRONIC COMMERCE CO., LTD.**, | § | |
| ***Plaintiff*,** | § | |
| **v.** | § | |
| **THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A, HEZE KYLIN INTERNATIONAL TRADE CO., LTD., *and* QINGDAO ZHAORUYUAN E-COMMERCE CO., LTD.,** | § | **EP-25-CV-00392-KC** |
| ***Defendants*.** | § | |

**REPORT AND RECOMMENDATION**

This is a "Schedule A" patent infringement case.[1] Before the Court is Plaintiff Wuxi Gougelila Electronic Commerce Co., Ltd.'s ("Wuxi") "Motion for Entry of Default and Default Judgment" (ECF No. 56). Therein, Wuxi moves for default judgment against Defendant Qingdao Zhaoruyuan E-Commerce Co., Ltd. d/b/a Zhaoruyuan (Zhaoruyuan or "Defendant #3")—the last remaining defendant after Wuxi voluntarily dismissed 35 other defendants. The Honorable District Judge Kathleen Cardone referred the motion to the undersigned Magistrate Judge.[2] For the reasons that follow, the Court finds that Wuxi's motion, treated as a motion for default judgment,[3] should be granted in part and denied in part without prejudice to refiling.

---

[1] *See Jacki Easlick, LLC v. Accencyc US*, No. 2024-1538, 2026 WL 2363984, at *1 (Fed. Cir. Aug. 14, 2026) (In "a typical 'Schedule A' case, . . . 'a plaintiff joins together a large number of unrelated online merchants in a single infringement complaint.'" (quoting amicus brief)).

[2] *See* Text Order (Aug. 11, 2026) (Cardone, J.).

[3] After filing this motion and in response to Judge Cardone's order, Wuxi filed a separate motion for clerk's entry of default.

## I. BACKGROUND

Wuxi, a Chinese company having a principal place of business in Wuxi City, China, designs, markets, and sells pet playpen products.[4] In the U.S., Wuxi's products are sold through Amazon.[5] Wuxi owns U.S. Design Patent No. D1,085,555 (the "D'555 patent"), which claims a design for a pet playpen; the patent was issued on July 22, 2025.[6] On September 3, 2025, Wuxi brought this lawsuit asserting the D'555 patent against a group of 36 individuals and business entities (collectively "Defendants"), including Zhaoruyuan. Defendants, all of whom reside and/or operate in China,[7] are e-commerce vendors who sell dog playpen products through online storefronts like Amazon, Walmart and Temu,[8] under seller aliases with "Merchant Names" and "Merchant IDs."[9] Wuxi alleges that without any authorization or license from Wuxi, Defendants offered for sale, sold, and/or imported into the U.S. pet playpen products that directly or indirectly infringe the D'555 patent.[10] Wuxi asserts a single claim under 35 U.S.C. § 171.

On the same day, September 3, 2025, Wuxi moved for an *ex parte* temporary restraining order (TRO), seeking to enjoin Defendants from selling the accused products and to require third-party e-commerce platforms such as Amazon, eBay, Target, Temu, Walmart, and others to freeze all financial accounts and funds connected to Defendants.[11] On September 17, Judge

---

[4] Verified Compl. at ¶¶ 10–11 [hereinafter Compl.], ECF No. 1.

[5] *Id.* at ¶ 11.

[6] *Id.* Ex. A, ECF No. 1-1.

[7] Compl. at ¶ 16.

[8] Schedule A-2 (listing the accused products), ECF No. 12-2.

[9] Schedule A, ECF No. 12.

[10] Compl. at ¶ 29.

[11] Pl.'s Proposed TRO at 4–8, ECF No. 13; *see also generally* Pl.'s Mot. for TRO, ECF No. 7.

Cardone granted the TRO and set the case for a preliminary injunction hearing on October 1, 2025.[12]

While granting the TRO, Judge Cardone denied without prejudice Wuxi's motion to serve Defendants via email under Federal Rule of Civil Procedure 4(f)(3).[13] Since then, Wuxi has not renewed its motion for alternative service of process, and the record does not reflect that Wuxi ever served process upon Zhaoruyuan.

Also, while granting the TRO, Judge Cardone ordered Wuxi to provide a copy of the TRO to each Defendant via the best available means, including emails, notifying them of the TRO and the preliminary injunction hearing date.[14] On September 23, 2025, Wuxi emailed a copy of the TRO together with a copy of the complaint to Defendants' email addresses that Wuxi obtained from Amazon, Temu, and Walmart.[15]

On September 30, 2025, Zhaoruyuan, by and through Attorneys Wei Wang and Ruoting Men, appeared in this case; counsel also appeared on behalf of Defendant Heze Kylin International Trade Co., Ltd., who operates on the Amazon platform under the merchant name,

---

[12] Order Granting TRO, ECF No. 19.

[13] *Id.* at 11. In its motion for alternative service, Wuxi argued that Defendants are all residents of China and, by using online marketplaces, they make their products available to consumers without exposing contact information; as a result, Wuxi said, it had limited contact information of questionable accuracy for Defendants. Pl.'s Mot for Elec. Serv. of Process Pursuant to Fed. R. Civ. P. 4(f)(3) at 2–3, ECF No. 6. On the related issue of whether the Hague Convention applies here, *see* Hague Convention on Serv. Abroad of Jud. & Extra-Jud. Docs. in Civ. & Com. Matters, Art. 1, Nov. 15, 1965, 20 U.S.T. 361 ("This Convention shall not apply where the address of the person to be served with the document is not known."), Judge Cardone found that Wuxi failed to exercise reasonable diligence to discover Defendants' physical addresses, and therefore, denied Wuxi's motion without prejudice to refiling with evidence that it has exercised reasonable diligence to discover physical addresses for Defendants but has not succeeded. Order Granting TRO at 9, 11.

[14] Order Granting TRO at 14; *see also id.* at 10–11.

[15] Pl.'s Notice of Compliance with Order at 1–2, ECF No. 20.

"My Wely."[16] On October 1, Zhaoruyuan and My Wely jointly filed a motion to sever pursuant to 35 U.S.C. § 299 and Federal Rule of Civil Procedure 21, asking Judge Cardone to sever Wuxi's claims against them from Wuxi's claims against the other defendants.[17] Also on October 1, Zhaoruyuan and My Wely jointly filed a motion to vacate the TRO and a response in opposition to preliminary injunction.[18]

On October 1, 2025, Judge Cardone held the preliminary injunction hearing. At the hearing, Zhaoruyuan, by and through its counsel, appeared; so did Wuxi, by and through its counsel. Following the hearing, and after extending the TRO, Judge Cardone converted the TRO to a preliminary injunction on October 8.[19]

On October 15, 2025, in order to properly decide Zhaoruyuan and My Wely's motion to sever and address a related argument that Wuxi raised at the October 1 hearing, Judge Cardone ordered Zhaoruyuan and My Wely file a written notice by October 29, stating whether they are in fact the entities responsible for the Merchant Names and IDs associated with any of the other remaining Defendants identified in Schedule A.[20] On October 27, Wuxi dismissed its claims against My Wely.[21] When Zhaoruyuan failed to file a written notice by October 29, as ordered,

---

[16] Appearance of Counsel, ECF No. 28; Mot. for Admission Pro Hac Vice, ECF No. 29.

[17] Defs. My Wely & Zhaoruyuan's Mot. to Sever & Drop Parties (or, in the Alternative, Dismiss Without Prejudice) For Misjoinder Under 35 U.S.C. § 299 & Fed. R. Civ. P. 21 at 1, 11–12 [hereinafter Mot. to Sever], ECF No. 31. The motion was also filed on behalf of a second defendant, My Wely.

[18] Defs. My Wely & Zhaoruyuan's Mot. to Vacate TRO & Opp'n to Pl.'s Mot. for Prelim. Inj. at 15, ECF No. 32.

[19] Order at 11 [hereinafter *Prelim. Inj. Order*], ECF No. 37.

[20] Order at 2, ECF No. 40. At the hearing, Wuxi argued that it was unopposed to severance "if defendants are able to truly prove that they're not related to anyone else." *Id.* at 1 (brackets and ellipses omitted).

[21] Notice of Voluntary Dismissal Under Rule 41(a)(1), ECF No. 45.

Judge Cardone ordered Zhaoruyuan to file the written notice by November 6, 2025, and show cause why it failed to do so by the prior deadline.[22]

On November 5, 2025, counsel for Zhaoruyuan (Attorneys Men and Wang) moved to withdraw,[23] and as required for a withdrawal under this District's Local Rules,[24] counsel provided Zhaoruyuan's contact information to the Court.[25] On November 14, Judge Cardone granted the motion to withdraw and ordered Zhaoruyuan to retain new counsel by December 4, explaining that Zhaoruyuan is a corporation and it must be represented by counsel to proceed in this litigation.[26] The judge warned Zhaoruyuan that "failure to obtain counsel by this date may result in adverse consequences, including default judgment against it."[27] The judge also instructed withdrawn counsel to provide a copy of the November 14 order to Zhaoruyuan and ordered the court clerk to send a copy of the same to Zhaoruyuan.[28] On November 17, the clerk emailed a copy of the order to Zhaoruyuan at the latter's email address, which withdrawn counsel had supplied.[29]

---

[22] Show Cause Order at 2, ECF No. 47.

[23] Counsel's Mot. to Withdraw & Resp. to Ct.'s Order to Show Cause, ECF No. 48.

[24] Order at 2 ("Per this Court's local rules, an attorney seeking to withdraw from a case must provide the name and office address of the successor attorney. If a successor attorney is not known, the attorney must instead include the client's name, address and telephone number." (internal citation omitted) (citing W.D. Tex. L.R. AT-3)), ECF No. 49.

[25] Notice of Def. #3's Contact Info., ECF No. 50.

[26] Order at 1–2 [hereinafter *Order to Retain Counsel*], ECF No. 51.

[27] *Id.* at 2.

[28] *Id.*

[29] Clerk's Email, ECF No. 52.

The deadline to retain new counsel came and went, but Zhaoruyuan did not retain one. On December 8, 2025, Judge Cardone determined that Zhaoruyuan was "in default in this case" for its failure to retain new counsel and ordered Wuxi to move for entry of default and default judgment against Zhaoruyuan.[30] She denied as moot Zhaoruyuan's motion to sever.[31]

By January 5, 2026, Wuxi voluntarily dismissed all defendants except Zhaoruyuan.[32] On that day, Wuxi filed the instant motion. Initially, Wuxi moved Judge Cardone's court to enter default and default judgment.[33] Judge Cardone ordered Wuxi to separately file a motion for clerk's entry of default against Zhaoruyuan.[34] Wuxi followed by filing a motion for clerk's entry of default based on Judge Cardone's earlier determination that Zhaoruyuan was in default because it failed to retain new counsel.[35] On January 12, 2026, the Clerk entered default against Zhaoruyuan.[36] To date, Zhaoruyuan has not retained new counsel.

## II. STANDARD

Federal Rule of Civil Procedure 55(b)(2) authorizes courts to enter, on a plaintiff's application, default judgment against a defendant. Fed. R. Civ. P. 55(b)(2). Securing a judgment by default under Rule 55(b)(2) requires: (1) the defendant's default; (2) the clerk's entry of

---

[30] Order at 2, 4, 5 [hereinafter *Default Order*], ECF No. 53.

[31] *Id.* at 5.

[32] Status Report, ECF No. 55.

[33] Pl.'s Mot. for Entry of Default & Default J. at 1 [hereinafter Pl.'s Mot.], ECF No. 56.

[34] Order at 1, ECF No. 58.

[35] Mot. for Clerk's Entry of Default 1–2, ECF No. 59.

[36] Entry of Default at 1, ECF No. 60.

default; and (3) the court's entry of default judgment. *N.Y. Life Ins. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996).[37]

"A *default* occurs when a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules." *Id.* (emphasis in original). However, "failure to plead or otherwise defend," Fed. R. Civ. P. 55(a), is not the only way a default may occur. *See* 10A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2682 (4th ed. 2026) (hereinafter, Wright & Miller) ("Rule 55(a) does not represent the only source of authority in the rules for the entry of a default that may lead to judgment.").[38]

A plaintiff must secure "an entry of default by the court clerk," *see* Fed. R. Civ. P. 55(a), which "simply is an official recognition of the fact that one party is in default," 10A Wright & Miller § 2692 (4th ed.). After the clerk enters a default against the defendant, the plaintiff "may apply for a judgment based on such default." *N.Y. Life Ins.*, 84 F.3d at 141; *see also* Fed. R. Civ P. 55(b)(2).

In determining whether a default judgment should be entered, courts conduct a three-part analysis. *Graham v. Coconut LLC*, No. 4:16-CV-606, 2017 WL 2600318, at *1 (E.D. Tex. June 15, 2017). First, the court asks: whether the entry of default judgment is "procedurally warranted." *United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d

[37] The Federal Circuit applies regional circuit law to procedural issues that are not themselves substantive patent law issues. *Madey v. Duke Univ*., 307 F.3d 1351, 1358 (Fed. Cir. 2002). The entry of a default judgment is such a procedural issue. *See, e.g.*, *United Constr. Prods., Inc. v. Tile Tech, Inc.*, 843 F.3d 1363, 1367–68 (Fed. Cir. 2016) ("A decision to sanction a litigant by ordering default judgment pursuant to Federal Rule of Civil Procedure 37 is one that is not unique to patent law[,] and we therefore apply regional circuit law to that issue." (cleaned up)); *Flir Sys., Inc. v. Gambaro*, 486 F. App'x 878, 881 (Fed. Cir. 2012) (applying regional circuit law in reviewing district "court's decision to order default judgment as a sanction for misconduct"); *Am. Standard, Inc. v. Harden Indus., Inc.*, 975 F.2d 870 (Fed. Cir. 1992) (applying regional circuit law in reviewing district court's refusal to vacate a default judgment).

[38] *See also, e.g.*, *United Constr. Prods., supra*, 843 F.3d at 1367–68; *Flir Sys., supra*, 486 F. App'x at 881.

381, 384 (W.D. Tex. 2008). Second, regarding the defendant's liability, the court asks: whether the plaintiff's "well-pleaded" factual allegations, assumed as true, provide "a sufficient basis" for entering default judgment, *Nishimatsu Const. Co. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)[39]—stated another way, whether such allegations state a claim for relief under "the minimum standards of Rule 8," *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015). Finally, the court determines what form of relief, if any, the plaintiff should receive. *Martinez v. Eltman L., P.C.*, 444 F. Supp. 3d 748, 752 (N.D. Tex. 2020). In particular, courts do not award damages without a hearing unless the amount claimed is "a liquidated sum" or "one capable of mathematical calculation" by reference "to the pleadings and supporting documents." *James v. Frame*, 6 F.3d 307, 310–11 (5th Cir. 1993).

## III. DISCUSSION

By its motion, Wuxi requests entry for default judgment against Zhaoruyuan. It requests monetary relief in the amount of $62,966.82 and permanent injunctive relief.

### A. Entry of Default Judgment Is Procedurally Warranted.

In determining whether the entry of a default judgment is procedurally appropriate, courts consider the following factors: (1) "whether material issues of fact are at issue"; (2) "whether there has been substantial prejudice"; (3) "whether the grounds for default are clearly established"; (4) "whether the default was caused by a good faith mistake or excusable neglect"; (5) "the harshness of a default judgment"; and (6) "whether the court would think itself obliged to set aside the default on the defendant's motion." *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). Below, the Court first addresses the third and last *Lindsey* factors and then the remaining ones.

[39] *See also Nishimatsu Const.*, 515 F.2d at 1206 ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact.").

### 1. *Third Lindsey Factor: Whether the Grounds for Default Are Clearly Established*

The default here was not due to Zhaoruyuan's failure to answer (because Zhaoruyuan was never served with process), but it was due to Zhaoruyuan's failure to retain new counsel after it had briefly appeared in the case through Attorneys Men and Wang but then the attorneys withdrew.[40] As Judge Cardone pointed out,[41] because Zhaoruyuan is a corporation, it must be represented by counsel to proceed in this litigation, *see Rowland v. Cal. Men's Colony*, 506 U.S. 194, 201–02 (1993), and a corporate defendant may be found in default when it fails, after court warning, to appear through counsel, *see, e.g., M2 Tech., Inc. v. M2 Software, Inc.*, 589 F. App'x 671, 674, 676–77 (5th Cir. 2014); *Mount Vernon Fire Ins. v. Obodoechina*, No. CIV. A. 08-3258, 2009 WL 424326, at *1 (S.D. Tex. Feb. 19, 2009).

After granting the attorneys' motion to withdraw, Judge Cardone ordered Zhaoruyuan to retain new counsel by a date certain and warned Zhaoruyuan that "failure to obtain counsel by this date may result in adverse consequences, including default judgment against it."[42] Judge Cardone ordered the withdrawing attorneys and the clerk to provide a copy of her order to Zhaoruyuan, and the clerk followed by emailing a copy of the order to Zhaoruyuan's email address.[43] Zhaoruyuan did not heed Judge Cardone's warning, so, she determined that Zhaoruyuan was in default in this case,[44] and based on Judge Cardone's determination, the clerk

---

[40] *Default Order* at 2.

[41] *Order to Retain Counsel* at 1–2.

[42] *Id.* at 2.

[43] *Id.*; Clerk's Email.

[44] *Default Order* at 2.

entered a default against Zhaoruyuan.[45] The grounds for default therefore are clearly established.

***2. Sixth Lindsey Factor: Whether the Court Would Think Itself Obliged to Set Aside the Default on the Defendant's Motion***

The "principal basis" for an attack on a default judgment asserts that "it is void for lack of jurisdiction": the lack of subject-matter jurisdiction renders a default judgment a nullity, whereas the lack of personal jurisdiction renders a default judgment void. 10A Wright & Millar § 2695 (4th ed.). The Court clearly has subject matter jurisdiction as Wuxi brought this action for patent infringement pursuant to 35 U.S.C. § 171. So, the Court addresses personal jurisdiction.

When a party seeks entry of a default judgment, the district court has "an affirmative duty" to look into its jurisdiction over the defendant. *Sys. Pipe & Supply, Inc. v. M/V VIKTOR KURNATOVSKIY*, 242 F.3d 322, 324 (5th Cir. 2001). "Service of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served," and therefore, before the court "may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons," which is governed by Federal Rule of Civil Procedure 4, "must be satisfied. *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co*., 484 U.S. 97, 104 (1987) (brackets omitted). "In the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant." *Murphy Bros. v. Michetti Pipe Stringing, Inc*., 526 U.S. 344, 350 (1999).

As mentioned, Wuxi did not serve process upon Zhaoruyuan. But any challenge to service can be waived; and so too can any challenge to personal jurisdiction. Federal Rule of Civil procedure 12(h)(1) provides that a party waives defenses under Rule 12(b)(2) (lack of

[45] Entry of Default at 1.

personal jurisdiction) and Rule 12(b)(5) (insufficient service of process) if it does not raise that defense in a Rule 12 motion or include it in a responsive pleading. Fed. R. Civ. P. 12(h)(1). Although "only motions under Rule 12 . . . trigger the application of Rule 12(h)," "waiver on other grounds such as litigation conduct" may occur. 5C Wright & Millar § 1391 (3d ed.); *cf. also Peterson v. Highland Music, Inc*., 140 F.3d 1313, 1318 (9th Cir. 1998) ("Rule 12 does not say that there are no other means of waiving a defense of lack of jurisdiction over the person."); *accord Brokerwood Int'l (U.S.), Inc. v. Cuisine Crotone, Inc*., 104 F. App'x 376, 380 (5th Cir. 2004). Thus, for example, "[a] general appearance . . . by a defendant that fails to dispute personal jurisdiction will waive any defect in service or personal jurisdiction." *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986); *accord Holder v. Gruenbeck*, No. 6:20-CV-00875, 2021 WL 933317, at *1 (W.D. La. Mar. 9, 2021) ("A defendant may also waive his objection [to personal jurisdiction] by failing to assert the objection with his first general appearance." (citing *Jackson v. FIE Corp*., 302 F.3d 515, 523 (5th Cir. 2002))).[46]

Here, on October 1, 2025, shortly before the hearing on preliminary injunction, Zhaoruyuan, by and through its former counsel, filed its motion to sever claims under Rule 21. However, in arguing why Zhaoruyuan was improperly joined in this case under 35 U.S.C § 299, Zhaoruyuan argued, *inter alia*, that Wuxi's complaint "fails to plead any plausible facts demonstrating that the claims against . . . Zhaoruyuan arise from the 'same transaction, occurrence, or series of transactions or occurrences' involving the 'same accused product,' as

[46] *See also PaineWebber Inc. v. Chase Manhattan Priv. Bank (Switzerland)*, 260 F.3d 453, 460–61 (5th Cir. 2001) ("[A] party may waive any jurisdictional objections if its conduct does not reflect a continuing objection to the power of the court to act over the defendant's person. . . . [W]hen a party seeks affirmative relief from a court, it normally submits itself to the jurisdiction of the court with respect to the adjudication of claims arising from the same subject matter." (cleaned up)).

required by § 299(a)"[47] and repeatedly mentioned Rule 12(b)(6), *Twombly*, and *Iqbal*.[48] Thus, in substance, Zhaoruyuan's motion to sever was, in part, a Rule 12(b)(6) motion, but the motion did not assert, much less mention, any defense based on service or personal jurisdiction.[49] Consequently, under Rule 12(h)(1), Zhaoruyuan waived these defenses.

Alternatively, and additionally, even if Zhaoruyuan's motion to sever is deemed not to be a Rule 12(b)(6) motion, Zhaoruyuan waived its defenses of insufficient service of process and lack of personal jurisdiction through its litigation conduct. "Federal courts have held that . . . a defendant can waive a Rule 12(b) defense if it is not asserted in an opposition to a preliminary injunction." *Craters & Freighters v. Daisychain Enters*., No. 09-04531 CW, 2010 WL 761310, at *3 (N.D. Cal. Mar. 2, 2010) (collecting cases), *aff'd sub nom*. *Craters & Freighters v. Benz*, 465 F. App'x 719 (9th Cir. 2012). On the same day, October 1, 2025, Zhaoruyuan also filed a response in opposition to Wuxi's request for preliminary injunction, opposing the request on merits, but Zhaoruyuan did not interpose any defense based on service or personal jurisdiction.[50] Moreover, at the preliminary injunction hearing held later on that day, Zhaoruyuan's counsel did not raise these defenses either.[51] Consequently, Zhaoruyuan waived its defenses of insufficient service of process and lack of personal jurisdiction. *See Craters & Freighters*, 2010 WL

[47] Mot. to Sever at 7–9.

[48] *Id.* at 1–2, 6–7, 12.

[49] *See generally id.* at 4–15.

[50] Defs. My Wely & Zhaoruyuan's Mot. to Vacate TRO & Opp'n to Pl.'s Mot. for Prelim. Inj. at 1 (arguing that Zhaoruyuan "oppose[s] Plaintiff Wuxi Gougelila Electronic Commerce Co., Ltd. ("Wuxi" or "Plaintiff")'s motion for a preliminary injunction"); *id.* at 2 (requesting that the court should "deny the motion for a preliminary injunction"); *id.* at 7–8 (arguing that Wuxi's vague claims of price erosion and reputational harm are conclusory, speculative, and insufficient to support Wuxi's request for preliminary injunction).

[51] *See generally* Hr'g Audio (Oct. 1, 2025), ECF No. 33.

761310, at *4 (holding that defendants waived their Rule 12(b)(5) defense of insufficient service of process because they twice opposed plaintiff's motion for a preliminary injunction, first at a hearing and then in their opposition brief, but in neither instances their former counsel argued a defense of defective service).[52]

Moreover, Wuxi's allegations, together with undisputed facts, make out a *prima facie* showing of personal jurisdiction—in particular, specific personal jurisdiction.[53] Applying the "minimum contacts" element of due process, the Federal Circuit has established a three-part test for determining whether specific jurisdiction exists: "(1) whether the defendant purposefully directed its activities at residents of the forum; (2) whether the claim arises out of or relates to the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is reasonable and fair." *New World Int'l, Inc. v. Ford Glob. Techs., LLC*, 859 F.3d 1032, 1037 (Fed. Cir. 2017) (internal quotes omitted); *see also Genetic Veterinary Scis., Inc. v. LABOKLIN GmbH & Co. KG*, 933 F.3d 1302, 1309–10 (Fed. Cir. 2019).[54]

[52] *Compare Donohue v. Wang*, No. 1:22-CV-00583-DII, 2023 WL 4090779, at *2 (W.D. Tex. May 19, 2023) (holding that the defendant did not waive his personal jurisdiction and service of process defenses where the defendant asserted in its response to plaintiff's motion for preliminary injunction that the court did not have jurisdiction over him because of a lack of proper service and his counsel re-asserted the same at a preliminary injunction hearing, and reasoning that the defendant's actions did not qualify as a general appearance sufficient to waive his jurisdictional arguments), *R & R adopted*, 2023 WL 4096743 (W.D. Tex. June 20, 2023).

[53] "To survive a motion to dismiss [for lack of personal jurisdiction] in the absence of jurisdictional discovery, plaintiffs need only make a *prima facie* showing of jurisdiction." *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010). "Where the plaintiff's factual allegations are not directly controverted, they are taken as true," and the "court must resolve all factual disputes in the plaintiff's favor." *Id.* (cleaned up).

[54] "[B]ecause Texas's long-arm statute extends to the limits of federal constitutional due process," the inquiry "whether personal jurisdiction exists over an out-of-state defendant" reduces to "whether the assertion of personal jurisdiction would violate due process." *Jack Henry & Assocs., Inc. v. Plano Encryption Techs. LLC*, 910 F.3d 1199, 1203–04 (Fed. Cir. 2018); *see also Bryan v. Gordon*, 384 S.W.3d 908, 912 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("The Texas long-arm statute authorizes Texas courts to exercise jurisdiction over a nonresident defendant who 'does business' in Texas and lists certain

Here, Wuxi's complaint alleges that Zhaoruyuan targeted sales to consumers in the U.S., including Texas, by setting up and operating a fully interactive, internet e-commerce store on Amazon under the merchant name "Zhaoruyuan" and merchant ID "AP7AVLZFPM8PC."[55] The complaint avers that the e-commerce store "offer[s] to ship" to Texas; "accept[s] payment" in U.S. dollars; and on information and belief, "sold products featuring [Wuxi]'s patented design to residents of Texas."[56] It also alleges that Zhaoruyuan committed "tortious acts in Texas" by selling the accused products.[57] And there is no dispute that Zhaoruyuan sold, and generated revenue from the sale of, the accused products through Amazon.[58]

The Court finds that Zhaoruyuan is subject to personal jurisdiction in Texas. *See Telebrands Corp. v. Yangjiang New Sports Tech. Prods. Co.*, No. A-26-CA-01472-XR, 2026 WL 1954881, at *1, *3 (W.D. Tex. June 9, 2026) (concluding that the court has specific personal jurisdiction over defendants, who are Chinese entities, where plaintiff, a patent owner, alleged that the defendants "listed and sold infringing expandable hoses on online marketplaces, such as Amazon.com" and that they "market and sell infringing products, and/or derive substantial revenues from their business transactions in Texas," including "the sale and shipment of infringing expandable garden hose products," and reasoning that "[s]elling, or making offers to sell, infringing products in the forum State satisfies the 'purposeful availment' prong and is

---

activities that constitute 'doing business,' including 'commits a tort in whole [or] in part' in Texas." (citing Tex. Civ. Prac. & Rem. Code Ann. § 17.042)).

[55] Compl. at ¶ 2 (cross-citing Schedule A).

[56] *Id.*

[57] *See id.*

[58] *See* Notice at 2 (Zhaoruyuan's counsel providing the revenue that Zhaoruyuan generated from the sale of the accused products through Amazon), ECF No. 36.

sufficiently related to a patent infringement claim to satisfy the 'arising out of' and 'relating to' prong of the due process test" (citing *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1379 (Fed. Cir. 1998))).[59]

Finally, the Court turns to another potential basis for attacking a default judgment—the Rule 55(b)(2)'s notice requirement. 10A Wright & Millar § 2695. That Rule provides that "[i]f the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing." Fed. R. Civ. P. 55(b)(2). "A failure to give the required notice generally is considered a serious procedural error that justifies . . . the setting aside of a default judgment." 10A Wright & Miller § 2687 (4th ed.). Wuxi certifies that on January 5, 2026, it emailed a copy of the motion for default judgment to Zhaoruyuan at the latter's email address; recall, Zhaoruyuan's attorneys supplied its email address to the Court as a pre-condition for their withdrawal. Consequently, here, the Rule's notice requirement would not be a basis for attacking default judgment.

In sum, the Court thinks that default judgment would not have to be set aside on a later motion by Zhaoruyuan. *See Lindsey*, 161 F.3d at 893.

### *3. The Remaining Lindsey Factors*

As to the first *Lindsey* factor, Zhaoruyuan never answered or otherwise responded to Wuxi complaint, and so, no material facts are in dispute. As to the second factor, Zhaoruyuan

---

[59] *Norrell v. Does*, No. 1:23-CV-00238-RP, 2023 WL 5803706, at *1, *3 (W.D. Tex. Sept. 6, 2023) (concluding that the court has specific personal jurisdiction over the defendants, who reside in China, based on the plaintiff's allegations that the defendants operate marketplace accounts on websites including Amazon.com, "accept orders for the [i]nfringing [g]oods from and offer shipping to Texas addresses," "have sold and shipped goods marketed to consumers in Texas . . . using the [plaintiff's copyrighted] [w]orks" (brackets omitted) (applying Fifth Circuit law on personal jurisdiction)), *R & R adopted*, 2023 WL 6892026 (W.D. Tex. Oct. 19, 2023).

has prejudiced Wuxi by not responding to Wuxi's complaint or motion for default judgment and, as we will see, *see* Part III(C)(1), *infra*, by not providing access to much-needed discovery on damages. As to the fourth factor, there is no evidence that a good faith mistake or excusable neglect caused Zhaoruyuan's default. And, finally, as to the fifth factor, since Judge Cardone ordered Zhaoruyuan to retain new counsel in November 2025, Zhaoruyuan has had ample time to comply with the judge's order, but, to date, it has not retained new counsel; under the circumstances, entering default judgment against Zhaoruyuan would not be harsh.

* * *

In summary, the Court finds that entering default judgment is procedurally warranted.

**B. Liability**

A design patent limits protection to "the ornamental design" of an article of manufacture. *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293 (Fed. Cir. 2010); *see also* 35 U.S.C. § 171(a). A "design patent is infringed if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same." *Samsung Elecs. Co. v. Apple Inc.*, 580 U.S. 53, 56 (2016) (internal quotes omitted). Thus, "[i]nfringement of a design patent is determined from the viewpoint of the ordinary observer, comparing the patented design with the [accused] article's overall appearance." *Hafco Foundry & Mach. Co. v. GMS Mine Repair & Maint., Inc.*, 953 F.3d 745, 751 (Fed. Cir. 2020). In making that determination, courts "focus[] on the figures illustrated in the patent," *Curver Luxembourg, SARL v. Home Expressions Inc.*, 938 F.3d 1334, 1339 (Fed. Cir. 2019); after all, the scope of the claimed design "is defined by drawings" in the patent, *Pac. Coast Marine Windshields Ltd. v. Malibu Boats, LLC*, 739 F.3d 694, 702 (Fed. Cir. 2014). "[T]he patented and accused designs need not be identical in order for

design patent infringement to be found." *Hafco Foundry & Mach.*, 953 F.3d at 751. "The controlling inquiry is how the ordinary observer would perceive the article." *Id.*

Here, Wuxi's exhibits (referenced in its complaint) contain screenshots of two dog playpen products that, according to Wuxi, Zhaoruyuan sold through Amazon.[60] Wuxi alleges that dog playpen products "featur[e] [Wuxi's] patented design," but Zhaoruyuan, without any authorization or license from Wuxi, offered the products for sale in the U.S., sold them in the U.S., and/or imported them into the U.S.[61]

In entering the TRO and later, the preliminary injunction, Judge Cardone compared the screenshots of Zhaoruyuan's products with the figures in the D'555 Patent and concluded that an ordinary observer would find Zhaoruyuan's product to be substantially similar to Wuxi's patented design.[62] After conducting an independent side-by-side comparison of the patent's figures and the screenshots of Zhaoruyuan's products, this Court reaches the same conclusion: their designs are substantially the same.

## C. Relief Requested

### *1. Monetary Relief*

Wuxi moves for monetary relief under 35 U.S.C. § 284, and alternatively, under 35 U.S.C. § 289.[63] Under § 284, the Patent Act's general damages provision, which applies to both utility and design patents, a patent owner may recover lost profits, *i.e.*, the profits that the patent owner lost due to infringement, or receive a reasonable royalty. *Asetek Danmark A/S v. CMI*

---

[60] Schedule A-1 at 3 (screenshots of the accused products), ECF No. 12-1; Compl. at ¶ 18; *see also* Schedule A-1 at 2.

[61] Compl. at ¶¶ 3, 29.

[62] Order Granting TRO at 3; *Prelim. Inj. Order* at 5.

[63] Pl.'s Mot. at 7.

*USA Inc.*, 852 F.3d 1352, 1362 (Fed. Cir. 2017); 35 U.S.C. § 284 (providing that "the court shall award the [patentee] damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer"). On the other hand, § 289, which applies exclusively to design patents, a patent owner may "recover the total profit an infringer makes from the infringement." *Samsung Elecs.*, 580 U.S. at 58. Thus, § 289 "requires the disgorgement of the infringers' profits to the patent [owner], such that the infringers retain no profit from their wrong." *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1448 (Fed. Cir. 1998). Here, Wuxi's request for monetary relief is, in substance, a request for disgorgement of Zhaoruyuan's profits under § 289,[64] and so, the Court addresses § 289 only.

Section 289 provides:

> Whoever during the term of a patent for a design, without license of the owner, (1) applies the patented design, or any colorable imitation thereof, to any article of manufacture for the purpose of sale, or (2) sells or exposes for sale any article of manufacture to which such design or colorable imitation has been applied shall be liable to the owner to *the extent of his total profit, but not less than $250,* recoverable in any United States district court having jurisdiction of the parties.
>
> Nothing in this section shall prevent, lessen, or impeach any other remedy which an owner of an infringed patent has under the provisions of this title, but he shall not twice recover the profit made from the infringement.

35 U.S.C. § 289 (emphasis added). Thus, under this section, Wuxi may recover either

---

[64] *Id.* at 8 (requesting that the Court should award the amount of known sales (i.e., $62,966.82) under 35 U.S.C. § 289); *see also Believe Pursue LLC v. Individuals, Corps., Ltd. Liab. Cos., P'ships, & Unincorporated Ass'ns. Identified on Schedule "A"*, No. 25-CV-20162, 2025 WL 4349865, at *5 (S.D. Fla. Dec. 22, 2025) (hereinafter *Believe Pursue II*) ("Although Plaintiff initially sought damages under both statutory provisions, [the magistrate judge] explained in the R&R that Plaintiff's request for lost profits under § 284 was, in substance, a request for disgorgement of Defendant's total profits from infringing sales, which falls within the scope of § 289."), *adopting* 2025 WL 2427675, at *11 (S.D. Fla. July 29, 2025) (hereinafter *Believe Pursue I*) ("Plaintiff has presented no evidence of its own lost sales, market share, or any 'but for' damages analysis required to sustain a lost profits claim under § 284. Its damages theory is entirely grounded in . . . Defendant's sales, not Plaintiff's losses." (internal citation omitted)); *cf. also Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1291 (Fed. Cir. 2002) ("When only a design patent is at issue, a patentee may not recover both infringer profits and additional damages under § 284.").

Zhaoruyuan's "total profits" from its infringing sales or $250 in statutory minimum damages. *Nordock, Inc. v. Sys. Inc.*, 803 F.3d 1344, 1352 (Fed. Cir. 2015), *cert. granted, judgment vacated on other grounds*, 580 U.S. 1028 (2016). Moreover, unlike Section 284, which provides for enhanced damages "up to three times the amount found or assessed," 35 U.S.C. §284; *see also Trs. of Columbia Univ. v. Gen Digital Inc.*, 169 F.4th 1320, 1339 (Fed. Cir. 2026), Section 289 "has no provision for enhanced damages and states that the patentee 'shall not twice recover the profit made from the infringement,'" *Catalina Lighting*, 295 F.3d at 1291 (citing *Braun Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 824 (Fed. Cir. 1992), and quoting 35 U.S.C. § 289).[65]

Wuxi states that based on the information obtained from Amazon, Zhaoruyuan generated $62,966.82 in revenue from the sale of the accused products, and pursuant to Judge Cardone's TRO, Amazon restrained $1,551.38 on account of Zhaoruyuan.[66] Wuxi argues that since Zhaoruyuan has chosen not to participate in this case, Wuxi has limited information regarding Zhaoruyuan's profits from the sale of the accused products.[67] Wuxi contends that Zhaoruyuan has not met its burden to show any deductions.[68] So, it asks the Court to award the entire amount of Zhaoruyuan's revenue, i.e., gross sale amount, under 35 U.S.C. § 289.[69]

Wuxi's request is problematic. In essence, it requires the Court to treat Zhaoruyuan's gross revenue as its "total profit." 35 U.S.C. § 289. It thus defies common sense and basic

---

[65] *See also Braun*, 975 F.2d at 824 & n.17 (holding that "by trebling [the defendant's] total profit, the district court clearly exceeded its statutory authority" and explaining that "[t]he district court erroneously concluded that the treble damage provision of 35 U.S.C. § 284 also applies to 'profits' awarded under 35 U.S.C. § 289[;] [h]owever, there is simply no authority to support this assertion").

[66] Poplin Declr. at ¶ 5, ECF No. 56-1.

[67] Pl.'s Mot. at 8.

[68] *Id.*

[69] *Id.*

economics: "profits are calculated by subtracting total costs (including both direct and indirect costs) from total revenue," *IP Power Holdings Ltd v. Bam Brokerage Inc.*, No. SACV1101234JVSANX, 2014 WL 12589630, at *4–*5 (C.D. Cal. Mar. 3, 2014) (addressing a motion for default judgment) (citing *Nike*, 138 F.3d at 1447), and "[t]otal profits only equal gross revenue if costs are zero, which is highly improbable," *id.*; *see also Deckers Outdoor Corp. v. ShoeScandal.com, LLC*, No. CV 12-7382 ODW SHX, 2013 WL 6185203, at *3 (C.D. Cal. Nov. 25, 2013) ("[The defendant's] total *sales* are not its total *profits*. In arriving at [the defendant's] total-profit figure under § 289, [the plaintiff] cannot look solely to [the defendant's] gross sales figures. Rather, it must subtract from the gross sales all of [the defendant's] direct and indirect expenses." (emphasis in original) (addressing a request for default judgment)).

Wuxi cites *WMS Gaming Inc. v. WPC Prods. Ltd.*, 542 F.3d 601 (7th Cir. 2008), for the proposition that where defendants have failed to produce documents to characterize revenue, courts have entered a profits award for the entire revenue amount.[70] *WMS Gaming* is inapposite. That case involved a trademark-infringement claim under the Lanham Act, and the statue at issue provided for recovery of "'(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.'" *WMS Gaming*, 542 F.3d at 606–07 (quoting 15 U.S.C. § 1117(a)). In its motion for default judgment before the district court, the plaintiff requested an equitable accounting of profits. *Id.* at 606. Specifically, it requested $287.4 million, which was the total amount of revenue that the defendant earned, but the district court awarded $2.7 million. *Id.* at 604. The court reasoned that the plaintiff's damages calculation "overstated" the defendant's revenue and that the plaintiff did not identify any information from which the court could

[70] *Id.* at 7–8.

calculate what percentage of the defendant's revenues were attributable to the defendant's infringing uses of the plaintiff's trademarks. *Id.* at 607.

The Seventh Circuit held that the lower court erred and reversed. *Id.* at 608–09. Pointing out that 15 U.S.C. § 1117(a) provides that "'[i]n assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed,'" *id.* at 606–07 (quoting 15 U.S.C. § 1117(a)), the appellate court explained that the burden was on the defendant to show that certain portions of its revenues were not obtained through its infringement of the plaintiff's marks and that the defendant, who defaulted, did not come forward with any evidence suggesting that deductions were warranted from the revenues. *Id.* at 608–09. It observed, "[c]ourts consistently find that when a trademark plaintiff offers evidence of infringing sales and the infringer fails to carry its statutory burden to offer evidence of deductions, the plaintiff's entitlement to profits under the Lanham Act is equal to the infringer's gross sales." *Id.* at 609 (collecting cases). Because the plaintiff had provided evidence of the total amount of revenue that the defendant earned, the appellate court concluded that in the absence of evidence from the defendant showing that deductions were warranted, the plaintiff was entitled to the revenue supported by its evidence. *Id.* at 609.

Thus, *WMS Gaming*'s conclusion rested on the Lanham Act's statutory burden shifting provision: "In assessing profits the plaintiff shall be required to prove *defendant's sales only*; defendant must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a) (emphasis added). But the Patent Act statute at issue here, 35 U.S.C. § 289, contains no such provision.[71]

[71] *See MCP IP, LLC v. .30-06 Outdoors, LLC*, No. 2:21-CV-581, 2023 WL 2298471, at *1 (S.D. Ohio Mar. 1, 2023) (Under 35 U.S.C. §289, it is a plaintiff's burden to prove the defendant's gross profits by a preponderance of the evidence. (citing, among other cases, *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1310 (Fed. Cir. 2018))).

Consequently, unlike in the statute at issue in *WMS Gaming*, there is no congressional "marching orders" in § 289. *Cf. Dyson Tech. Ltd. v. David 7 Store*, 132 F.4th 526, 529 (7th Cir. 2025) (applying 15 U.S.C. § 1117(a) and citing *WMS Gaming*, 542 F.3d at 609). Moreover, awarding Wuxi the entire amount of Zhaoruyuan's gross revenue, in lieu of Zhaoruyuan's profits, has the effect of awarding enhanced damages, which, the Federal Circuit has said, exceeds a court's authority under 35 U.S.C. § 289. *See Braun*, *supra*, 975 F.2d at 824 & n.17; *Catalina Lighting*, *supra*, 295 F.3d at 1291.

Therefore, the Court finds that Wuxi should not be awarded the entire amount of Zhaoruyuan's gross revenue. That said, the Court recognizes Wuxi's plight. The information about Zhaoruyuan's profits is in Zhaoruyuan's hands. As one court has remarked in a similar case, "the practical reality" is that given that the defendant "has not appeared in this case, the likelihood of it willingly providing an accounting or showing up for a hearing is low." *Sundesa, LLC v. IQ Formulations, LLC*, No. CV1906467ABMAAX, 2020 WL 3067383, at *3 (C.D. Cal. Feb. 27, 2020). Under such circumstances, Wuxi should consider providing an "estimat[e]" of Zhaoruyuan's profits backed by non-speculative evidence. *Id.*; *MCP IP*, 2023 WL 2298471, at *2 (in assessing the plaintiff's entitlement to an award of total profits under 35 U.S.C. § 289, noting that "[a] plaintiff is necessarily at a disadvantage in proving defendants' profits when the defendants are in default and have not provided their own revenue and cost records" and that "in this situation, courts typically accept non-speculative evidence from other sources to estimate the defendant's profits" (collecting cases)).

The Court's research reveals that some lower courts have awarded monetary relief under 35 U.S.C. § 289 based on "the typical profit margin" in the industry to which the accused products pertain—substantiated by a declaration of the plaintiff's corporate representative.

*Deckers Outdoor*, 2013 WL 6185203, at *2–*3 (awarding based on a 45 percent profit margin and the defendant's total sales, where plaintiff submitted a declaration of its vice president stating that "the typical profit margin for footwear distributors [is] 40–50 percent" and finding the "evidence of the typical profit margin in the footwear industry sufficient for an award of damages on default"); *Pretty Star Store, LLC v. Chen*, No. LACV1805187JAKAGRX, 2019 WL 13039951, at *2 (C.D. Cal. May 8, 2019) (awarding based on a 50% profit margin and the defendant's revenue, where the plaintiff submitted a declaration of its chief executive officer stating that the plaintiff "operates at a 45%~50% profit margin when selling its products on Amazon" and that "a 50% profit margin is typical in the industry," and finding this evidence "sufficient for purposes of the motion for default judgment . . . to calculate a reasonable estimate of [the defendants] profits from the sale of the infringing articles" (internal quotes omitted)).

The Court is persuaded by the approach taken in *Deckers Outdoor* and *Pretty Star Store*. Accordingly, Wuxi should be required to submit a declaration of its corporate representative (or another competent individual) stating the typical profit margin in the pet playpen industry. Given that both Wuxi and Zhaoruyuan are Chinese companies[72] and they both sell their respective products through Amazon,[73] it is not unreasonable to expect that Wuxi's corporate representative would be able to testify to the typical profit margin in the pet playpen industry, but if not, Wuxi may use another individual who is competent to testify to the same.

* * *

[72] Compl. at ¶¶ 10, 16.

[73] *Id.* at ¶ 11 (stating that Wuxi Products can be purchased from Amazon); Notice at 2 (Zhaoruyuan's counsel providing the revenue that Zhaoruyuan generated from the sale of the accused products through Amazon), ECF No. 36.

In sum, although the Court finds that Wuxi is entitled to monetary relief under 35 U.S.C. § 289, it finds that Wuxi should not be awarded $62,966.82—which is Zhaoruyuan's gross revenue from its sale of the accused products through Amazon. Accordingly, Wuxi's motion for default judgment should be denied without prejudice as to the amount requested. *See MCP IP*, 2023 WL 2298471, at *2 ("[I]f the plaintiff is unable to provide non-speculative evidence of the defaulting defendant's profits, courts will deny requests for damages without prejudice to supplementing their evidentiary submissions." (collecting cases)).

Further, Federal Rule of Civil Procedure 72 allows Wuxi to file written objections to this Report and Recommendation "[w]ithin 14 days after being served with a copy" of the same. Fed. R. Civ. P. 72(b)(2). Within the objection period, Wuxi may file, as discussed above, a declaration of its corporate representative (or another competent individual) stating the typical profit margin in the pet playpen industry. *See Deckers Outdoor*, *supra*, 2013 WL 6185203, at *2–*3; *Pretty Star Store*, *supra*, 2019 WL 13039951, at *2. To the extent that Wuxi fails to submit such a declaration, it may have to settle for the statutory minimum award of $250. 35 U.S.C. § 289.

### *2. Permanent Injunctive Relief*

Wuxi requests the Court to enter a permanent injunction under 35 U.S.C. § 283 enjoining Zhaoruyuan from infringing or otherwise violating Wuxi's rights in the D'555 Patent and grant Wuxi at least all injunctive relief previously awarded by Judge Cardone in the TRO and Preliminary Injunction.[74] The Patent Act provides that courts "may" grant injunctions "on such terms as it may deem reasonable" to prevent the violation of any right secured by a patent. 35 U.S.C. § 283. A patent-plaintiff seeking a permanent injunction "must demonstrate: (1) that it

[74] Pl.'s Mot. at 7; *see also* Compl. ¶ 33 (requesting injunctive relief pursuant to 35 U.S.C. § 283).

has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

In granting the TRO and preliminary injunction, Judge Cardone evaluated the first, third, and fourth factors and found that they weighed in Wuxi's favor. Specifically, Wuxi established an irreparable injury because it established a substantial threat of price erosion and reputational harm.[75] She also found that the balance of the equities weighed in favor of Wuxi because whereas Wuxi faced the substantial threat of price erosion and reputational harm as a result of Zhaoruyuan's infringing conduct, Zhaoruyuan would not be harmed if it is enjoined from engaging in conduct it had no right to engage in.[76] And finally, she found that the public interest would not be disserved because Wuxi demonstrated that its patent is likely valid, the pet playpen products at issue occupy a niche market, and enjoining Zhaoruyuan's sale of the accused products would not have a broad-reaching effect that might harm the public interest.[77]

No change has occurred since Judge Cardone made these findings. In fact, Zhaoruyuan simply disappeared and defaulted after the preliminary injunction hearing, and as such, there is not any new factual basis that requires the Court to re-evaluate the same factors.[78] The second

---

[75] *Prelim. Inj. Order* at 8.

[76] *See* Order Granting TRO at 5–6.

[77] *See id.* at 4, 6.

[78] *See, e.g.*, *Whirlpool Corp. v. Krosol Glob. Ltd.*, No. 2:25-CV-00254-JRG-RSP, 2025 WL 3480722, at *2 (E.D. Tex. June 20, 2025) (finding the patent-plaintiff will suffer irreparable harm where the plaintiff articulated a loss of market share, price erosion, and harm to its goodwill and reputation, and granting permanent injunction); *Sportspower Ltd. v. Zhejiang Hongcheng Info. Tech. Co.*, No. WA-23-

*eBay* factor also weighs in favor of granting a permanent injunction. Given that Zhaoruyuan has disappeared and it is a foreign entity without discernable domestic assets,[79] it is doubtful that Wuxi would be able to collect damages with meaningful monetary value. *See Whirlpool Corp.*, 2025 WL 3480722, at *2 (expressing "serious doubt"). Moreover, the threat of continued infringement exists,[80] and damages cannot be calculated for future infringing activities. Without a permanent injunction, Wuxi would likely be forced to engage in repeated litigation against Zhaoruyuan. *See Seventh Coast Ventures LLC v. Xiamen Daysun Indus. Co.*, No. CV H-22-4474, 2025 WL 3488669, at *5 (S.D. Tex. Nov. 14, 2025), *R & R adopted*, 2025 WL 3487706 (S.D. Tex. Dec. 4, 2025). The Court finds that all of the *eBay* factors weigh in favor of granting a permanent injunction.

Turing to the scope of the permanent injunction, Wuxi has submitted a proposed order that lists the specific injunctions: (1) enjoining Zhaoruyuan from directly and indirectly infringing the D'555 patent,[81] (2) requiring third parties, including Amazon, *eBay*, AliExpress, Alibaba, Temu, Walmart, Target, and other online marketplace platforms, to "disable and cease displaying" Zhaoruyuan's accused products,[82] and (3) requiring the third parties to release all

CV-00053-OLG, 2025 WL 4674420, at *8 (W.D. Tex. June 9, 2025) (finding the balance of hardships warrants entering permanent injunction because the defendant did not appear in the action but continued to benefit from its infringing conduct); *Abbott Lab'ys v. Andrx Pharms., Inc.*, 452 F.3d 1331, 1348 (Fed. Cir. 2006) ("[T]he public is best served by enforcing patents that are likely valid and infringed.").

[79] *See* Compl. at ¶ 23 (alleging "Defendants maintain offshore bank accounts and regularly move funds from the PayPal accounts or other financial accounts to offshore bank accounts outside the jurisdiction of this Court").

[80] *See id.* at ¶ 19 (alleging "Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their network of online marketplaces and user accounts").

[81] Pl.'s Proposed Default J. Order at 2–3 (para. 1), ECF No. 56-2.

[82] *Id.* (para. 2).

monies held in Zhaoruyuan's financial accounts to Wuxi in full or partial satisfaction of any monetary judgment awarded here.[83] In granting a permanent injunctive relief in a default judgment, courts have issued similar injunctions.[84] The Court finds that the scope of the requested injunctions are reasonable. However, the Court makes one observation. The requested injunction requiring third parties to release funds in satisfaction of any monetary judgment is, of course, contingent upon, as discussed above, Wuxi's submission of appropriate and sufficient evidence to support a monetary award under 35 U.S.C. § 289 and the amount that Judge Cardone may ultimately award; as such, the precise language proposed by Wuxi may require modifications.[85]

## IV. CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff Wuxi Gougelila Electronic Commerce Co., Ltd.'s Motion for Entry of Default and Default Judgment (ECF No.

---

[83] *Id.* at 3–4 (para. 5).

[84] *E.g.*, *JFXD TRX ACQ LLC v. Crankit Int'l Pty Ltd.*, No. 2:23-CV-00298-JHC, 2023 WL 5460265, at *3 (W.D. Wash. Aug. 24, 2023); *Tan Grow Inc. v. Unincorporated Ass'ns.*, No. 1:24-CV-1855 (RDA/WBP), 2025 WL 1951935, at *1–2 (E.D. Va. July 16, 2025); *Believe Pursue I*, 2025 WL 2427675, at *14 (order to release funds).

[85] The Court suggests the following modifications to the language proposed by Wuxi (underlines represent insertions and strikethroughs represent deletions):

> All monies identified in Defaulting Defendant's financial accounts or financial accounts of Defaulting Defendant's owners or officers, including but not limited to monies held by Third Party Providers, are hereby released, up to the amount of the monetary judgment, to Plaintiff as payment of the above-identified ~~damages~~ monetary judgment. Third Party Providers are hereby ordered to immediately freeze and then transfer to Plaintiff or Plaintiff's undersigned attorney the amounts from Defaulting Defendant's financial accounts or financial accounts of Defaulting Defendant's owners or officers, up to ~~a total of **$62,966.82**~~ the amount of the monetary judgment, within seven (7) calendar days of receipt of this Order. This order shall be in force until Plaintiff has received the entire ~~**$62,966.82**~~ amount of the monetary judgment awarded above.

Pl.'s Proposed Default J. Order at 3–4 (para. 5).

56), treated as a motion for default judgment, be **GRANTED IN PART and DENIED IN PART WITHOUT PREJUDICE**. The motion should be **DENIED WITHOUT PREJUDICE** as to the amount of damages requested (i.e., $62,966.82) and **GRANTED** in all other respects.

**IT IS ORDERED** that within the 14-day period for objecting to this Report and Recommendation and consistent with Part III(C)(1), *supra*, Plaintiff **MAY FILE** a declaration of its corporate representative (or another competent individual) stating the typical profit margin in the pet playpen industry. To the extent that Plaintiff fails to submit such a declaration, it may receive only the statutory minimum award of $250.

**So ORDERED and SIGNED this 14th day of September 2026.**

**ANNE T. BERTON**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE**

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THE FOREGOING REPORT, WITHIN FOURTEEN DAYS OF SERVICE OF SAME, MAY BAR DE NOVO DETERMINATION BY THE DISTRICT JUDGE OF AN ISSUE COVERED HEREIN AND SHALL BAR APPELLATE REVIEW, EXCEPT UPON GROUNDS OF PLAIN ERROR, OF ANY UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS AS MAY BE ACCEPTED OR ADOPTED BY THE DISTRICT COURT.**